J-S16005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHAWN BENDER | : | No. 2531 EDA 2019 |

Appeal from the PCRA Order Entered August 5, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0013839-2008

BEFORE:  DUBOW, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                              **FILED JUNE 16, 2020**

The Commonwealth appeals from the August 5, 2019 Order entered in the Philadelphia Common Pleas granting Appellee, Shawn Bender ("Bender"), a new trial based on an ineffective assistance of counsel claim pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–46.  After careful review, we conclude that the PCRA court properly granted Bender a new trial because his trial counsel provided ineffective assistance when counsel failed to request a jury instruction for the lesser-included offense of Involuntary Manslaughter during Bender's trial for Murder and related charges.  We, therefore, affirm the PCRA court's grant of a new trial.

Bender's arrest and conviction stem from a deadly car crash that occurred in Philadelphia during the early morning hours of July 16, 2008, which resulted in the deaths of Charles Johnson ("Johnson") and Bender's fourteen-month-old daughter, Sharissa Bender ("Baby").  A prior panel of this

Court set forth a detailed recitation of the events leading up to the crash, which we adopt for purposes of this appeal. *Commonwealth v. Bender*, No. 105 EDA 2011, unpublished memorandum at *2-5 (Pa. Super. filed January 4, 2012). We provide the following details relevant to this appeal. On the evening in question, an escalating conflict between Bender and Baby's mother, Jaleesa Hall ("Mother"), resulted in Bender threatening that Mother would never see Baby again and brandishing something wrapped in fabric that appeared to be a gun. Mother and Baby entered a car driven by Johnson and proceeded to drive away while Bender was screaming and yelling. Bender pursued Johnson's car at a high rate of speed. Multiple witnesses saw Bender drive erratically, run red lights, and hit Johnson's car from behind several times. Eventually, Johnson's car crashed into a concrete barrier and burst into flames. None of the passengers in Johnson's car could recall the moment of impact, but an accident reconstruction expert concluded that Bender's car hit Johnson's car and began riding, or pushing, the car at a high rate of speed so that Johnson was no longer in control of the car and crashed. Police recovered a black semi-automatic from Bender's car, and a small caliber handgun from Johnson's car.

Johnson and Baby both died as a result of the injuries they sustained in the crash, while Mother and two additional passengers, Mother's sister ("Sister") and cousin ("Cousin"), sustained life-threatening injuries. Bender did not suffer serious injuries.

Appellant was subsequently charged with multiple counts of First-Degree Murder, Third-Degree Murder, Attempted Murder, Aggravated Assault, Recklessly Endangering Another Person ("REAP"), and Carrying a Firearm Without a License in Philadelphia. Bender was not charged with Homicide by Vehicle.

At Bender's four-day trial, the Commonwealth presented evidence to prove the above-stated facts. Relevant to this appeal, Bender testified on his own behalf and presented a different version of events. *See* N.T. Trial, 2/25/10, at 18-39. In sum, Bender testified that Cousin called him to come pick up Mother and Baby. *Id.* at 23. When he arrived, he saw Mother and Baby inside Johnson's car, and became concerned for Baby's safety because Baby was not in her car seat, which was in his car. *Id.* at 23-25. Bender denied both threatening anyone and brandishing a weapon. *Id.* at 27-28. Bender explained that he followed Johnson because he was concerned for Baby's safety, and wanted Baby to sit in a car seat. *Id.* at 28-30, 33. Bender admitted that his car made contact with Johnson's car twice; one time was accidental and one time was to get Johnson's attention to pull over because Bender's horn did not work. *Id.* at 31-35. Bender testified that he was also trying to call Mother on his cell phone but the phone was not working, and after the second tap on Johnson's car, he dropped his cell phone, hit his head on the steering wheel, and his vision was blurry. *Id.* Bender testified that, at the time, he did not think he was doing anything wrong and was only intending to get Johnson's attention and ensure that Baby was safe. *Id.* at

38-39. Bender denied hitting Johnson hard and said, even though they were both driving at a high rate of speed, he was only trying to catch up to Johnson's car and lightly tap it from behind. *Id.* at 69-70.

Bender's trial counsel, Gary M. Feldman, Esq., asked the court to give a jury instruction for Homicide by Vehicle, arguing that Bender's actions were reckless, but not with the "intent of being purposeful." N.T. Trial, 2/24/10, at 192-197. The trial court denied the request for the jury instruction because the Commonwealth had not charged Bender with that offense. *Id.* However, at Attorney Feldman's request, the trial court did take judicial notice of the Homicide by Vehicle statute and allowed Attorney Feldman to read the statute into the record.[1] N.T. Trial, 2/25/10, at 85.

During closing argument, Attorney Feldman argued to the jury that they should not find Bender guilty of First-Degree Murder, which requires intent to kill, or Third-Degree Murder, which requires malice; rather, the Commonwealth should have charged Bender with Homicide by Vehicle, which requires a *mens rea* of recklessness or negligence. N.T. Trial, 2/25/10, at 115-20. Attorney Feldman argued that Bender did not have the intent to

_____

[1] The Vehicle Code defines Homicide by Vehicle as follows: "Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death." 75 Pa.C.S. § 3732(a).

cause Johnson and Baby's death and that his actions might have been reckless or negligent, but lacked "malice," which he explained was, "cruelty, coldness of heart, wickedness to cause this accident." ***Id.***

Attorney Feldman did not request a jury instruction for the lesser-included offense of Involuntary Manslaughter, which, discussed *infra*, would have required the jury to find that Bender acted recklessly or in grossly negligent manner.

On February 26, 2010, a jury returned a verdict of guilty on two counts of Third-Degree Murder, three counts of Attempted Murder, three counts of Aggravated Assault, REAP, and Carrying Firearms Without a License in Philadelphia.[2] That same day, the court sentenced Bender to a mandatory term of life imprisonment, pursuant to 42 Pa.C.S. § 9715, for the second of his two convictions of Third-Degree Murder.

This Court affirmed his Judgement of Sentence, and the Pennsylvania Supreme Court denied *allocatur* on September 14, 2012. ***See Commonwealth v. Bender***, No. 105 EDA 2011 (Pa. Super filed January 4, 2012), *appeal denied,* 53 A.3d 49 (Pa. 2012).

Between August 20, 2012, and July 1, 2013, Bender filed three separate *pro se* PCRA Petitions. The PCRA court appointed counsel, who filed an

---

[2] 18 Pa.C.S. §§ 2502(c), 901(a), 2702(a)(1), 2705, and 6108, respectively.

Amended PCRA Petition.[3]  On October 8, 2018, Bender retained counsel, who filed a second Amended PCRA Petition on January 30, 2019, alleging that trial counsel was ineffective.  Specifically, the Petition alleged that trial counsel, Attorney Feldman, was ineffective when he failed to request jury instructions for Involuntary Manslaughter, a lesser-included offense of Murder, because Bender's trial testimony provided "some evidence" entitling him to these instructions for the deaths of Baby and Johnson.  Second Amended PCRA Pet., 1/30/19, at ¶10.  Further, the Petition alleged that "Attorney Feldman's omission so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place because it caused Mr. Bender to be convicted of two counts of third-degree murder when he should have been convicted of the lesser-included offense of involuntary manslaughter." *Id.* at ¶11 (citing 42 Pa.C.S. § 9543(a)(1)(i-ii)).

On August 5, 2019, the PCRA court held an evidentiary hearing on Bender's Amended PCRA Petition.  Attorney Feldman testified, *inter alia*, that his case strategy was to convince the jury that Bender did not commit an intentional act with malice as required to convict him of Third-Degree Murder;

---

[3] On August 6, 2014, the PCRA court appointed Todd Mosser, Esq., to represent Bender.  On January 22, 2016, the PCRA court relieved Attorney Mosser of his appointment and appointed Jennifer Bretschneider, Esq., who filed an Amended PCRA Petition on December 2, 2016.  On August 24, 2017, the PCRA court issued a Pa.R.Crim.P. 907 Notice to Dismiss Bender's Petition without a hearing.  Bender filed a Response, requesting to proceed *pro se.*  On October 20, 2017, the PCRA court held a **Grazier** hearing and granted Bender's request to proceed *pro se.*  On October 8, 2018, Appellant retained counsel.

he was hoping that the jury would convict Bender of a lesser-included offense; he now knows that Homicide by Vehicle is not a lesser-included offense of Third-Degree Murder but Involuntary Manslaughter is; he does not remember if he had a strategic reason for failing to ask for an Involuntary Manslaughter jury instruction; and he now wishes he had asked for such an instruction. N.T. PCRA Hearing, 8/5/19, at 12-25.

At the end of the hearing, the PCRA court granted Bender's PCRA Petition and awarded Bender a new trial on the charges of Third-Degree Murder.

The Commonwealth timely appealed and complied with Pa.R.A.P. 1925.[4] The PCRA court did not file an Opinion pursuant to Pa.R.A.P. 1925.[5]

---

[4] Although the PCRA court granted a new trial on the Third-Degree Murder charges pertaining to victims Johnson and Baby, the Commonwealth did not appeal the charges pertaining to Baby as a victim, at Docket No. CP-51-CR-0013840-2008. In Bender's Brief, he argues that this Court should quash the instant appeal because the Commonwealth failed to file separate notices of appeal from a single order resolving issues on separate dockets, relying on Pa.R.A.P. 341 (stating where "one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed") and *Commonwealth v. Walker*, 185 A.3d 969, 971 (Pa. 2018) (holding "where a single order resolve issues arising on more than one docket, separate notices of appeal must be filed for each case.") Bender's reliance is misplaced. Rule 341 and *Walker* do not compel an appellant to file an appeal at numerous dockets; rather, they require an appellant to file separate notices of appeal for each docket number listed on an order **if an appellant chooses to file an appeal at numerous dockets**. *See* Pa.R.A.P. 341; *Walker, supra*. Here, the Commonwealth chose to file an appeal at one docket, therefore, Rule 341 and *Walker* are inapplicable. Accordingly, we decline to quash this appeal.

[5] The PCRA court judge retired without writing a Pa.R.A.P. 1925(a) Opinion.

The Commonwealth raises the following issue on appeal:

Did the PCRA court err in granting post-conviction relief where [Bender] did not establish that trial counsel provided ineffective assistance of counsel by not requesting a jury instruction, where the jury's trial verdict and this Court's disposition on direct appeal disproved prejudice?

Commonwealth's Br. at 4.

We review an order granting or denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. *Commonwealth v. Jarosz*, 152 A.3d 344, 350 (Pa. Super. 2016) (citing *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014)). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012). We will not disturb the findings of the PCRA court unless there is no support for those findings in the record. *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012).

A PCRA petitioner who alleges ineffective assistance of counsel "will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the '[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009) (quoting 42 Pa.C.S. § 9543(a)(2)(ii)).

We presume counsel is effective. ***Commonwealth v. Cox***, 983 A.2d 666, 678 (Pa. 2009). To overcome this presumption, a petitioner must establish that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his act or omission; and (3) petitioner suffered actual prejudice. ***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015). In order to establish prejudice, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." ***Koehler***, 36 A.3d at 132 (citation omitted). A court will deny the claim if the petitioner fails to meet any one of these prongs. ***Jarosz***, 152 A.3d at 350.

In its Brief, the Commonwealth does not dispute that Bender's underlying claim has arguable merit or that Attorney Feldman lacked a reasonable basis for the omission of the jury instruction. Instead, the Commonwealth focuses on the prejudice prong of the above-mentioned test and avers that Bender did not prove that trial counsel's failure to request an Involuntary Manslaughter jury instruction prejudiced him. Commonwealth Br. at 16. Specifically, the Commonwealth argues that the jury found that Bender acted with malice sufficient to prove Third-Degree Murder and Aggravated Assault, and acted with the specific intent required to prove Attempted Murder, which "demonstrate that the jury never would have convicted him only of [I]nvoluntary [M]anslaughter, which requires a lower *mens rea* of mere recklessness or gross negligence." ***Id.*** at 19.

- 9 -

The Commonwealth further argues that, on direct appeal, Bender specifically challenged the sufficiency of the evidence supporting malice and this Court found that the evidence supported the jury's finding of malice. **Id.** at 16. Therefore, the Commonwealth contends, because the evidence supports a finding of malice there is no reasonable likelihood that the jury would have convicted Bender of a lesser-included offense of Third-Degree Murder if Attorney Feldman had requested such an instruction. **Id.** at 22.

"A defendant is entitled to a [jury instruction] on a lesser-included offense only where the offense has been made an issue in the case **and the evidence would reasonably support such a verdict**." **Commonwealth v. Barnes**, 871 A.2d 812, 823 (Pa. Super. 2005) (emphasis in original), *affirmed*, 924 A.2d 1202 (Pa. 2007). "Instructions regarding [criminal offenses] which are not before the court or which are not supported by the evidence serve no purpose other than to confuse the jury." **Commonwealth v. Phillips**, 946 A.2d 103, 110 (Pa. Super. 2008) (citation omitted). "An offense may be considered a lesser included offense if each and every element of the lesser offense is necessarily an element of the greater offense." **Commonwealth v. Brandon**, 79 A.3d 1192, 1194 (Pa. Super. 2013) (citation omitted).

Appellant was charged with First- and Third-Degree Murder. Both are defined as a killing conducted with malice. **Commonwealth v. Packer**, 168 A.3d 161, 168 (Pa. 2017); **see also** 18 Pa.C.S. § 2502(a) and (c). "[M]alice comprehends not only a particular ill-will, but also a wickedness of

- 10 -

disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Commonwealth v. Santos*, 876 A.2d 360, 363 (Pa. 2005) (internal punctuation and citations omitted). Further, "malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Packer*, 168 A.3d at 168 (internal quotation marks and citations omitted).

In contrast, Involuntary Manslaughter does not require malice. Rather, it is defined as a killing that is committed recklessly or with gross negligence. 18 Pa.C.S. § 2504(a). As provided in the Crimes Code, "[a] person is guilty of [I]nvoluntary [M]anslaughter when as a direct result of the doing of an unlawful [or] lawful act in a reckless or grossly negligent manner, he causes the death of another person." *Id.* Involuntary manslaughter is a lesser-included offense of Third-Degree Murder. *Commonwealth v. Polimeni*, 378 A.2d 1189, 1194-95 (Pa. 1977).

Instantly, the PCRA court granted Bender's PCRA petition for collateral relief because trial counsel should have requested an Involuntary Manslaughter jury instruction, and stated on the record: "Well, we never know what the jury is going to do . . . Mr. Feldman provided no reasonable basis [for not requesting the Involuntary Manslaughter jury instruction]. He didn't know about it. The record is completely devoid of it in terms of deciding in his attempt to find a lesser[-]included offense with a different *mens rea* than

malice regarding the two deaths." N.T. PCRA Hearing, 8/5/19, at 38-39; N.T. PCRA Hearing, 8/8/19, at 12. We agree.

When Attorney Feldman argued to the jury that Bender's actions lacked malice, but conceded that they might have been reckless or negligent, he made the offense of Involuntary Manslaughter an issue in the case. *See Barnes*, 871 A.2d at 823. When Bender testified to his version of events, he provided evidence that would reasonably support a verdict of Involuntary Manslaughter, namely that engaging in a high speed chase of Johnson's car and tapping it from behind to get his attention was reckless and grossly negligent, but lacked malicious intent. *Id*. Accordingly, Bender would have been entitled to a jury instruction for Involuntary Manslaughter if Attorney Feldman had requested it.

As the PCRA court stated, one never knows what a jury will decide. If Attorney Feldman had requested a jury instruction for Involuntary Manslaughter, there is a reasonable probability that the result of the proceeding would have been different. *See Koehler*, 36 A.3d at 132. Attorney Feldman even testified that, looking back, he wishes he had asked for an Involuntary Manslaughter jury instruction at the time of trial. Accordingly, Bender proved by a preponderance of the evidence that he suffered prejudice when Attorney Feldman failed to request a jury instruction for the lesser included offense of Involuntary Manslaughter, and the PCRA court did not err when it granted Bender's PCRA Petition.

Further, we reject the Commonwealth's argument that Bender was not prejudiced because the jury made findings that Bender acted with malice sufficient to prove Aggravated Assault, and acted with the specific intent required to prove Attempted Murder, which both "demonstrate that the jury never would have convicted him only of [I]nvoluntary [M]anslaughter, which requires a lower *mens rea* of mere recklessness or gross negligence." Commonwealth Br. at 19. The jury convicted Bender of Attempted Murder and Aggravated Assault for his actions towards Mother, Cousin, and Sister. Bender was charged with First- and Third-Degree Murder with respect to Johnson. The jury's findings regarding victims other than Johnson are irrelevant to whether counsel should have requested a jury instruction on a lesser-included offense for charges pertaining to Johnson's death.

We likewise reject the Commonwealth's argument that the jury was unlikely to render a different verdict if given an Involuntary Manslaughter instruction because this Court found the evidence was sufficient to support the jury's finding of malice on direct appeal, and affirmed Bender's conviction for Third-Degree Murder. *Id.* at 16. The Commonwealth contends that, "[i]n granting a new trial, the PCRA court set aside these findings of the jury and substituted its own." *Id*. at 22. This argument is unavailing.

The standard of review this Court applies to a sufficiency claim in a direct appeal is not the same standard that is applicable in our review of a claim raised in a successful PCRA Petition. On direct appeal, this Court was required to review Appellant's sufficiency claim in the light most favorable to the

Commonwealth, giving the Commonwealth the benefit of all reasonable inferences to be drawn from the evidence. *See Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). Effectively, our standard of review permitted this Court to disregard Bender's testimony in favor of the Commonwealth's interpretation of the facts on direct appeal.

In turn, we review the evidence supporting Bender's successful ineffective assistance of counsel claim in the light most favorable to Bender to determine whether the PCRA's court's decision is supported by the evidence of record and free of legal error. *See Koehler*, 36 A.3d at 131; *Jarosz*, 152 A.3d at 350. Accordingly, we are not permitted to disregard Bender's version of events. Because we are compelled to utilize a different standard of review for Bender's PCRA appeal, it is of no moment that this Court affirmed the jury's finding of malice on direct appeal.

In sum, the PCRA court did not err when it granted Bender a new trial after finding that Attorney Feldman's failure to request a jury instruction for the lesser-included offense of Involuntary Manslaughter resulted in prejudice to Bender. We, therefore, affirm the PCRA court's grant of a new trial.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/16/2020